245 N.J. Super. 577 (1991)
586 A.2d 327
BARBARA LEARN AND ROBERT LEARN, PLAINTIFFS-APPELLANTS,
v.
CITY OF PERTH AMBOY, PERTH AMBOY HOSPITAL, AND MARY LARSON, DEFENDANTS-RESPONDENTS. GERTRUDE BRESLOW AND IRVING BRESLOW, DEFENDANTS-THIRD-PARTY PLAINTIFFS/APPELLANTS,
v.
THE SHADE TREE AND BEAUTIFICATION COMMISSION OF THE CITY OF PERTH AMBOY, THIRD-PARTY DEFENDANTS/RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 1991.
Decided February 6, 1991.
*578 Before Judges PRESSLER, DEIGHAN and BAIME.
John C. Sinuk argued the cause for appellants Barbara Learn and Robert Learn (Lynch & Teitelbaum, attorneys; John C. Sinuk on the brief and reply letter briefs).
Bradley A. Kustin argued the cause for appellants Gertrude Breslow and Irving Breslow (Golden, Rothschild, Spagnola & *579 DiFazio, attorneys; Bradley A. Kustin on the brief and reply brief).
Donald S. DeDio argued the cause for respondents City of Perth Amboy and Perth Amboy Shade Tree Advisory Committee (Dwyer, Connell & Lisbona, attorneys; William T. Connell on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is a sidewalk fall-down case in which plaintiff Barbara Learn, whose husband Robert Learn sued per quod, sought recovery for her personal injuries from the abutting commercial landowners, defendants Gertrude and Irving Breslow[1], and from defendant City of Perth Amboy. The gravamen of the complaint was that a dangerous condition of the sidewalk had resulted from its upheaval caused by the roots of a municipal tree, imposing an obligation upon both the owners and the city to make the necessary repairs. Defendants Breslow then filed a third-party complaint against the Perth Amboy Shade Tree Commission claiming that it and the city owed them indemnification or contribution. On the first of a series of summary judgment motions, the trial court dismissed as to the municipal defendants on the ground that as a matter of law the commercial landowners, not they, were responsible for the sidewalk repair. The court then denied the motion for summary judgment made by the landowners, who claimed that the existence of the municipal shade tree commission immunized them from liability. We granted the landowners' motion for leave to appeal from the denial of their summary judgment motion and then, in order to avoid further truncation of the issues in what *580 had already become a procedural morass[2], we then granted plaintiff's motion for leave to appeal from the summary judgments in favor of the municipal defendants. We consolidated the two appeals and now affirm both orders.
The issues before us arise from the fact that the use of the property abutting the sidewalk is commercial, namely a professional office in which defendant Irving Breslow conducts his dental practice. We recognize that prior to 1981, an abutting landowner, except in limited and well-defined situations, had no general duty to repair a dilapidated sidewalk and hence was not liable to a pedestrian injured as a result of the sidewalk's defective condition. In that year the Supreme Court modified the nonliability rule, which it had recently reaffirmed in Yanhko v. Fane, 70 N.J. 528, 362 A.2d 1 (1976), and imposed liability on commercial landowners, holding that such landowners are responsible for maintaining abutting sidewalks in reasonably good condition and are liable to injured pedestrians for their negligent failure to do so. Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 432 A.2d 881 (1981). There is no doubt that a professional dental practice constitutes a commercial use within the ambit of Stewart. Thus there is no doubt, at least prima facie, that the defendant landowners here are liable to plaintiff for a negligent failure to maintain the sidewalk.
There are nevertheless two substantial remaining questions. The first is how, if at all, the commercial status of the abutting property affects the municipality's potential liability for a dangerous condition without regard to whatever immunities it might otherwise be entitled to under the Tort Claims Act, N.J.S.A. 59:1-1, et seq., or other applicable statute. The second is how, if at all, the existence of a municipal shade tree *581 commission affects the potential liability of the commercial landowner.
We have already considered the first of these questions in Christmas v. City of Newark, 216 N.J. Super. 393, 523 A.2d 1094 (App.Div. 1987), certif. denied, 108 N.J. 193, 528 A.2d 19 (1987), in which we held that a sidewalk abutting commercial property, because of the landowners' maintenance and repair obligations, did not constitute public property within the municipal control for which the municipality is liable. It was on the basis of this decision that summary judgment was granted to the municipal defendants. Since we concur in the Christmas holding in these precise circumstances, we affirm that summary judgment.
We considered the second of these questions in Tierney v. Gilde, 235 N.J. Super. 61, 561 A.2d 638 (App.Div. 1989). Irrespective of the actual breadth of its apparent holding that an abutting commercial landowner is relieved of liability by reason of the existence of a municipal shade tree commission created pursuant to N.J.S.A. 40:64-1, et seq., we are persuaded that Tierney does not apply here simply because Perth Amboy had no such commission in 1984 when this injury occurred. We reach this conclusion based on our analysis, insofar as the record permits, of the applicable ordinances of Perth Amboy as well as the municipal understanding and application of those ordinances.
To begin with, Perth Amboy did adopt an ordinance in 1964 which created a shade tree commission under the statute. That ordinance, following the statutory guidelines, placed the exclusive control over regulation, planting, care and control of shade and ornamental trees in public places, including sidewalks, in the commission. Since the planting and maintenance of trees on a public street necessarily implicates the sidewalk surrounding the tree, the statute provides that any other statute authorizing a person to lay sidewalks shall not be "construed to permit or authorize any interference with or injury to a highway *582 shade tree without the consent of the shade tree commission within whose jurisdiction such tree shall be located." N.J.S.A. 40:64-6. This provision was reiterated by the ordinance. The ordinance, also as authorized by statute, provided for penalties for its violation. N.J.S.A. 40:64-12. These provisions underlay the landowners' contention that despite their general obligation in respect of sidewalks, they were precluded by the ordinance from repairing a sidewalk whose defective condition was caused by a tree root since that action would have impinged upon the exclusive power of the shade tree commission. They also contend that if they were to have undertaken the repair they would have been in violation of the statute and subject to penalty. We pass for the moment the soundness of this argument and the question of whether it comports with the holding in Tierney. We do so because the fact is that in 1972, after the passage of this ordinance, Perth Amboy adopted Mayor-Council Plan B of the Optional Municipal Charter Law, N.J.S.A. 40:69A-1, et seq., 40:69A-49 to -53, repealed by L. 1981, c. 465, but continuing to govern pursuant to N.J.S.A. 40:69A-208.1. In connection therewith it adopted a new administrative code in 1972, which, among other purposes, defined the new structure of city government, including city departments. Section 11 of the 1972 code established a department of public works consisting of various divisions, one of them denominated the division of buildings and grounds, among whose stated responsibilities was the trimming, planting and care of public trees (Section 11.4(b)). Section 11.7 of the code created a "Shade Tree Advisory Committee" within the department of public works, whose function was to "advise the director [of public works] with respect to the care, planting, trimming and destruction of all shade trees in the public ways of the city."[3]
*583 The actual function and operation of the Shade Tree Advisory Committee was described by the undisputed certification of the city attorney, Robert P. Levine, and the park superintendent, Gary A. Muska. The essence of Levine's affidavit is that the department of public works is a department within city government, not a separate entity, and hence that the advisory shade tree function is exercised by a "Committee of and within the City of Perth Amboy," not by "a separate entity that functions independently from the City." Mr. Muska's certification is even more explicit. It explains that the Shade Tree Advisory Committee, which was apparently administratively disbanded in 1988, never had any responsibility or duty beyond its ordinance assignment of advisory activities. More specifically, all complaints of "potentially hazardous and/or dangerous conditions caused by sidewalks or shade or ornamental trees ... were made directly to the Department of Public Works" or referred to that department and that department responded by inspecting the situation and taking "any action necessary to remedy the ... condition." In sum, he explains, it was and has been only the department, no other entity, which has the authority, as a direct arm of municipal government, to "regulate, plant, care for and control" the trees of the city.
The only conclusion which can reasonably be drawn from the foregoing is that the adoption of the present administrative code constituted at least an implied repeal of the prior ordinance which had created an independent shade tree commission under N.J.S.A. 40:64-1, et seq. While we recognize that implied repeal is a doctrine to be cautiously and sparingly applied because of the strong presumption against such repeal, nevertheless it is clear that the presumption must be deemed to have been overcome "when there is a clear showing that two legislative measures are patently repugnant or inconsistent." City of Camden v. Byrne, 82 N.J. 133, 154, 411 A.2d 462 (1980). See also State v. Milligan, 104 N.J. 67, 70, 514 A.2d 1316 (1986). There is obviously such patent inconsistency here. A municipality cannot assign precisely the same functions to two different *584 agencies. The functions Perth Amboy had previously assigned to the independent shade tree commission which it had created by ordinance pursuant to statute were reassigned to its department of public works. Moreover, an advisory shade tree committee having no power, no control and no appropriation is not the equivalent of the statutory shade tree commission, which is characterized by all these indicia of autonomy. Nor is there the slightest indication that at any time after the adoption of the administrative code, an independent statutory shade tree commission continued to operate, to have commissioners appointed, to have appropriations made or even to exist in any sense, if indeed it ever had. In brief, in 1984 there was no shade tree commission in Perth Amboy, only a Shade Tree Advisory Committee within the department of public works. Hence there is no impediment based on the Tierney rationale to enforcing the obligation of defendants as commercial landowners to maintain and repair abutting sidewalks. Consequently we affirm the summary judgment denying their motion for dismissal.
Because we have concluded Tierney is inapplicable here, we need not fully address its holding despite whatever reservations we may have. We do note, however, that even if we were to follow Tierney, we would nevertheless take the view that if a shade tree commission's consent were required in order for an abutting commercial landowner to repair a sidewalk made dangerous by a tree root, the landowner would still be obliged to seek that consent if he had notice of the defective condition so caused. Certainly, no immunity could attach if he had that knowledge and made no effort, consistent with municipal allocation of responsibility, to effect a repair. According to the record here, defendants did bring the defective sidewalk condition to the municipality's attention some time before plaintiff's injury and requested that the city make the necessary repair. The city's response was to advise the Breslows to make the repair themselves since sidewalk maintenance, by city ordinance, *585 was their responsibility. That advice was at least tantamount to any requisite consent.
We have suggested some concern over the Tierney rationale. We note that we do not necessarily agree with its reading of Hayden v. Curley, 34 N.J. 420, 169 A.2d 809 (1961). Hayden predated Stewart. Thus when Hayden was decided, the general rule of nonliability of all abutting landowners prevailed. Its holding therefore may be interpreted more narrowly than Tierney did and may be understood merely as saying that the existence of the statutory shade tree commission precludes the finding of an exception to nonliability. Somewhat modified conclusions might result from such a reading. Moreover we do not necessarily agree that the commercial abutting owner has neither a duty to notify of a hazard nor a duty to seek consent to making the repair himself. We leave these questions, however, to another day.
The summary judgments appealed from are affirmed and we remand to the trial court for a trial on damages.
NOTES
[1] Plaintiffs had originally joined other defendants they believed might have an ownership interest in the abutting property, but dismissals against those parties were eventually entered.
[2] Not the least of the procedural anomalies is that after our grant of leave to appeal, the court proceeded to try the liability issues against the landowners, despite the stay of further trial proceedings required by R. 2:9-1(a). We note that that trial resulted in a verdict apportioning 85% of the liability to the landowners and the balance to plaintiff. No damages trial has yet ensued.
[3] It appears that in a subsequent codification, this provision was redenominated section 4-76. Its verbiage and import, however, remained the same.