281 N.J. Super. 81 (1995)
656 A.2d 850
KOICKAL ABRAHAM, PLAINTIFF-APPELLANT, AND SUSSAME ABRAHAM, HIS WIFE, PLAINTIFF,
v.
VIJAY GUPTA, DEFENDANT-RESPONDENT, AND CITY OF JERSEY CITY AND/OR POLICE ATHLETIC LEAGUE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1995.
Decided April 21, 1995.
Before Judges PETRELLA, HAVEY and BROCHIN.
*82 Peter J. Vazquez argued the cause for appellant (Blume, Vazquez, Goldfaden, Berkowitz & Donnelly, P.C., attorneys; Mr. Vazquez on the letter-brief).
Gerald Kaplan argued the cause for respondent (Berlin, Kaplan, Dembling & Burke, P.A., attorneys (Mr. Kaplan, of counsel and on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
Plaintiff appeals from a summary judgment dismissing his personal injury action against defendant. In dismissing the complaint, the motion judge concluded that Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 432 A.2d 881 (1981), which imposes liability upon commercial property owners for negligent maintenance of abutting sidewalks, did not apply because defendant's property was vacant land.[1] We agree and affirm.
Plaintiff slipped and fell on snow which accumulated on a sidewalk abutting defendant's vacant lot on Old Bergen Road in Jersey City. The lot is zoned for commercial use, but is not adjacent to or used in conjunction with any enterprise or business owned or controlled by defendant. Plaintiff claims that defendant was negligent in failing to properly maintain the sidewalk by not removing the ice and snow.
The Supreme Court in Stewart overruled Yanhko v. Fane, 70 N.J. 528, 362 A.2d 1 (1976), by holding that "commercial property owners are ... liable for injuries on the sidewalks abutting their property that are caused by their negligent failure to maintain the sidewalks in a reasonably good condition." 87 N.J. at 150, 432 A.2d 881. The prior rule, under Yanhko, was that an abutting owner of a lot, whether commercial or residential, was not liable for the condition of a sidewalk, except when the owner or its *83 predecessor negligently constructed or repaired the sidewalk, or the owner used or obstructed the sidewalk in such a manner as to render it unsafe for passersby. 70 N.J. at 532, 362 A.2d 1.
In overruling Yanhko, Stewart did not define "commercial property owners." It does not suggest one way or the other whether a vacant lot, zoned for commercial use, is subject to its rule of liability. However, the facts in Stewart are significant. The plaintiff fell on a sidewalk abutting a "vacant boarded lot" adjacent to Ernie's Tavern in Newark. 87 N.J. at 150, 432 A.2d 881. Both the vacant lot and the lot on which Ernie's Tavern was located were owned by defendant Jay-Nan Corporation. Ibid. Thus, the facts suggest that liability was imposed because the abutting sidewalk where the fall occurred was an integral part of a commercial enterprise, Ernie's Tavern.
Moreover, Stewart's analysis and the authorities cited by the Court imply that its holding is confined to the imposition of a duty of care upon a commercial enterprise or business, but not upon the owners of vacant lots which are not utilized as part of such an enterprise or business. For example, in imposing liability upon "commercial property owners," the Court stressed the "considerable interest in and rights to use" abutting sidewalks, "rights that are especially valuable to an owner of abutting commercial property." Id. at 150-51, 432 A.2d 881. Importantly, the Court reasoned "sidewalks provide commercial owners with easy access to their premises and increase the value of their property. Public use of commercial establishments is facilitated by the existence of sidewalks." Id. at 152, 432 A.2d 881 (emphasis added).
Also, Stewart cites Justice Pashman's dissent in Yanhko, 70 N.J. at 537, 362 A.2d 1, where he observed that commercial landowners "as practical businesspeople" strongly encourage the use of their sidewalks in order to "facilitate the success of their business[es.]" Id. at 542, 362 A.2d 1 (Pashman, J., dissenting). Thus, imposition of a duty of care upon the business proprietor to maintain abutting sidewalks should be viewed no differently than the business *84 proprietor's duty to exercise reasonable care to protect the safety of the invited public within the business establishment itself. Ibid.
Finally, in support of its liability rule, Stewart cites the following dictum in Krug v. Wanner, 28 N.J. 174, 145 A.2d 612 (1958):

For the protection of its patrons, every commercial establishment must maintain its premises, including means of ingress and egress, in reasonably safe condition. And although the paved sidewalks fronting a commercial establishment are primarily for the use of the public generally, their condition is so beneficially related to the operation of the business that the unrestricted legal duty of maintaining them in good repair might, arguably, be placed on it.

[Stewart, 87 N.J. at 159, 432 A.2d 881 (quoting Krug, 28 N.J. at 179-80, 145 A.2d 612 (citations omitted)) (emphasis added).]
In our view, Stewart's reliance on the dissent in Yanhko and the dictum in Krug underscores an important policy underpinning to its holding: the benefits enjoyed by the "commercial establishment" by use of abutting sidewalks for ingress and egress purposes should impose a concomitant duty to keep those means of ingress and egress in reasonably good repair. Cf. Brown v. St. Venantius School, 111 N.J. 325, 334-35, 544 A.2d 842 (1988) (Stewart rule should be extended to private and parochial schools in part because "[s]afe and convenient access to [such schools] is undeniably a necessary component of that defendant's daily activities").
Moreover, since Stewart, our courts have focused on a second policy consideration: the commercial enterprise's capacity to spread the risk of loss. For example, the Court revisited the Stewart rule in Mirza v. Filmore Corp., 92 N.J. 390, 395, 456 A.2d 518 (1983), and extended it to commercial landowners who unreasonably fail to remove snow and ice from the abutting sidewalk after actual or constructive notice. It also concluded that the newly announced duty under Stewart should be applied retrospectively. Id. at 400, 456 A.2d 518. Referring to traditional factors applied in resolving the retrospective-prospective issue, the Court made the following observation, pertinent here:
Further, the goal of spreading the risk of loss would probably be served either through the increase of future insurance policy premiums, or, if the commercial *85 property owner has no insurance, through higher charges for the commercial enterprise's goods or services.

[Id. at 397, 456 A.2d 518 (emphasis added).]
We embraced that policy consideration in Borges v. Hamed, 247 N.J. Super. 295, 589 A.2d 169 (App.Div. 1991), where we held that a three-apartment house, occupied by the defendant-owners, the defendant-wife's mother, and the defendant-wife's sister, was not a commercial property as envisioned by Stewart. Id. at 296, 589 A.2d 169. We reasoned that the Stewart rule was based on the commercial properties' "nature as profit-making investments and their capacity to spread the risk of injury among tenants and business customers." Ibid. (emphasis added). Considering the Stewart rule in such a light, the "vertical family" compound in Borges was not considered a commercial property. Ibid.
What we glean from Stewart and its progeny is an unexpressed, but nevertheless intended limitation to its rule: liability is imposed upon the owner of a profit, or not-for-profit enterprise, regardless of whether the enterprise is in fact profitable. It is the capacity to generate income which is the key. In part, liability is imposed because of the benefits the entrepreneur derives from providing a safe and convenient access for its patrons. Secondly, such an enterprise has the capacity to spread the risk of loss arising from injuries on abutting sidewalks, either through the purchase of commercial liability policies or "through higher charges for the commercial enterprise's goods and services." Mirza, 92 N.J. at 397, 456 A.2d 518.
These policy considerations simply do not apply to defendant's vacant commercial lot. The lot is not owned by or used as part of a contiguous commercial enterprise or business. There is no daily business activity on the lot to which a safe and convenient access is essential. The lot has no means of generating income to purchase liability insurance or to spread the risk of loss by the increase in cost of goods sold or services rendered. Simply because it is designated "commercial" by the City's zoning ordinance *86 is an insufficient basis to impose the Stewart liability rule upon its owner.
Affirmed.
NOTES
[1] The complaint against the City was dismissed by summary judgment. There is no record of the disposition of the complaint against defendant The Police Athletic League.